### EISEMAN et al. v. HEINE et al.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

1. APPEAL—OBJECTIONS NOT RAISED BELOW—STATUTE OF FRAUDS.
   An objection that a contract was within the statute of frauds cannot be raised for the first time on appeal.

2. SALE—EVIDENCE.
   In an action for breach of a contract for the sale of 300 pieces of silk, letters between the parties were introduced in evidence showing that defendant considered that he had agreed, through his agent, to deliver 300 pieces, but that plaintiff claimed that the sale was for 300 pieces absolutely and 200 pieces conditionally. The agent, when on the stand, did not dispute plaintiff's testimony as to the sale for 300 pieces and there was evidence of defendant's attempts to secure the goods for delivery. *Held*, that it was not error to assume, as a matter of law, the existence of a contract for the sale of 300 pieces.

3. APPEAL—HARMLESS ERROR.
   In an action for breach of a contract for the sale of goods, that plaintiff was permitted to testify, to establish the market value of the goods, that he had visited certain establishments to ascertain the lowest price for which he could obtain the goods, and that the lowest price was a certain amount, is not ground for reversal, where one of the persons from whom plaintiff obtained the information testified to the market value, and the

jury, instead of adopting such value, based their verdict on the value as given by some of defendant's witnesses.

4. SALE BY SAMPLE—EVIDENCE—VALUE OF GOODS.
  In an action for breach of a contract for delivery of silk sold by sample, there was an issue as to the grade of the sample. *Held*, that it was proper to allow plaintiff to ask the value of silks of the quality claimed by him to be represented by the sample.

5. INSTRUCTIONS—ASSUMPTION OF DISPUTED FACT AS PROVEN.
  Where, in an action for breach of a contract for the delivery of goods sold by sample, the grade of the goods represented by the sample is disputed, it is proper to refuse an instruction as to the measure of damages which assumes, as proven, the grade of the goods.

Appeal from circuit court.

Action by Samuel Eiseman and another against Arnold B. Heine and another. From a judgment for plaintiffs, entered on a verdict, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

This action was to recover the sum of $1,500, as damages for breach of a contract to deliver goods ordered by the plaintiffs. There was no dispute that the goods had not been delivered, and that the time limited for such delivery had expired, but the answer denied that any contract had been made. Upon this appeal it is insisted that the plaintiffs failed to establish a contract, and that the court erred in holding, as matter of law, that they had established one; the appellants claiming that the most favorable view to be taken of the transaction was that it presented a question of fact, as to whether there was or was not a contract between the parties. Whether such contentions are right, or not, we think, depends upon the answer, which is to be sought in the testimony as to whether a contract was made by plaintiffs with defendants' agent when the order was originally given, or whether the contract is to be spelled out from the correspondence between the principals after the agent of the defendants was on his way to Yokohama. Samuel Eiseman, one of the plaintiffs, testified that on the 5th day of September, 1892, he gave to defendants' salesman an order for 500 pieces of changeable Kaiki silks,—300 pieces positively, and 200 pieces conditionally,—at 32½ cents per yard. A memorandum of the order given was made and retained by the defendants. This memorandum describes only 300 pieces, and no reference whatever is made therein to the additional 200 pieces mentioned by Mr. Eiseman in his testimony. On September 15th the defendants wrote to plaintiffs, saying, "We beg to hand you herewith copy of your import order on Japanese silks, with which you favored our Mr. Maass." In that letter, as indicated, there was inclosed a copy of the order for the 300 pieces. Plaintiffs replied to this letter as follows: "Your copy of order of 300 pcs. changeable Kaiki is not correct. The order was given for 500 pcs., the acct. for 200 pcs. to be given later. * * * Please send us the additional copy of order for 200 pcs." The defendants thereupon wrote, saying: "We have order from you for 300 pcs. changeable Kaiki silks only. If the order given by you to our Mr. Maass was for 500 pcs., he must have omitted to mention that fact to us. We may say that the order as made out by you, which we hold, only calls for 300 pcs. However, may this be as it will, we shall write by Wednesday's mail to our Mr. Maass, who is now on his way to Yokohama, and shall instruct him to give us his answer by cable, on receipt of which we shall communicate with you. In the meantime you will kindly acknowledge receipt of the copy of the 300 pcs., if you find the same correct in every particular except as to quantity." To this letter the plaintiffs made no reply. About six weeks thereafter the defendants notified the plaintiffs that "according to advice received from Japan, and confirmed by our Mr. Maass, * * * it is impossible to produce changeable Kaiki silks in colors which would be satisfactory. * * * The striped Kaiki silks, which turn out beautifully, will be delivered." To this the plaintiffs replied that their order was for changeable, and not for striped, Kaiki silks, and that unless the order was filled they would buy them on the market for defendants' account. In this last letter attention is called

to the fact that at the time the order was given a sample piece was furnished. the plaintiffs, and there is no serious dispute but that the sale was made on sample.

Argued before VAN BRUNT, P. J., and WILLIAMS, O'BRIEN, and INGRAHAM, JJ.

C. E. Rushmore, for appellants.

Mr. Blumenstiel, for respondents.

O'BRIEN, J. The plaintiffs did not sue for 500, but for the value of 300, pieces; and it will be noticed that the confusion which was created by reason of the departure of Mr. Maass, the defendants' agent, for Yokohama, was in reference to the additional sale of 200 pieces. But there was no serious question but that the plaintiffs had ordered, and the defendants had agreed to deliver, 300 pieces. The situation therefore appears to us, as it undoubtedly did to the learned trial judge, that there was a contract for the purchase of 300 pieces, about which there was no dispute made at the time when the original order was given. The appellants' contention that if this view were taken the contract thus made, being a verbal one, was within the statute of frauds, and therefore not binding, cannot be considered, for the reason that the question was not raised on the trial. In addition to the evidence furnished by their letters that the defendants understood that they had contracted to deliver 300 pieces, we have their subsequent conduct in attempting to obtain the goods in the market, and the fact that their agent, when examined upon the trial, did not in any wise contradict plaintiffs' testimony as to the making of the contract. If there had been a dispute about whether this was an order for the absolute sale of 300 or of 500 pieces, then the appellants' argument would be potent, because there was a question as to whether the minds of the parties met upon such a contract. As we have shown, however, the plaintiffs did not claim that a contract was made for the absolute sale of 500, but only of 300, pieces, and that the sale of the 200 pieces, about which all the dispute arose, was a conditional one, and subject to future confirmation by the parties.

Another error assigned was in permitting the plaintiff Samuel Eiseman, against objection, to testify that he had visited certain establishments, and had ascertained the lowest prices at which they could sell to him changeable Kaiki silks, and that the lowest price was 45 cents a yard. This information was obtained while the witness was out trying to buy the goods in the market, and, though strictly speaking, not competent evidence of value, the question was proper as showing the effort made by plaintiffs to replace the goods; and, as a Mr. Rosenthal (one of the two from whom the witness obtained the information) himself testified to the market value, we do not think the testimony was harmful, particularly when we find that the jury did not adopt this figure, but seem to have taken the value as given by the defendants' witnesses, of about 37 cents. The defendants not having been injured, therefore, we do not think that the error assigned affords ground for disturbing the verdict.

Another ruling on evidence claimed to be wrong was one permitting the plaintiffs to ask the market value of perfect changeable Kaiki

silk of that quality. It will be remembered that at the time the order was given a sample of the goods to be delivered was left with plaintiffs, and that upon this the negotiations were based. This sample was exhibited to witnesses on both sides, and a question was presented as to whether it was a sample of perfect or of imperfect goods. The plaintiffs claimed the former, and the defendants as strenuously insisted on the latter. Contending, as the plaintiffs were, that it was a sample of perfect goods, it was proper to ask what the market value of goods of that quality was, just as the defendants' witnesses were permitted to testify, as one of the latter did, that it was imperfect and full of streaks, and that goods of that character sold for a price even below the contract price. We do not think that the plaintiffs were bound by the defendants' view as to the character of the goods, and as the sample was produced, and a reference made to it in the question objected to, we think that the ruling was proper.

Upon the measure of damages, it was conceded that the true rule was the difference between the contract price and the market value, and the court clearly presented this to the jury. At the close of the charge, however, not satisfied therewith, the defendants' counsel asked the court to charge "that in estimating damages the plaintiffs could not, in any view of the case, recover more than the difference between $32\frac{1}{2}$ cents per yard and the market value of imperfect goods, such as the sample submitted to the witness." This was denied, and, we think, properly, for the reason that the counsel had no right to characterize the goods as imperfect, and to insist that the court should adopt such characterization. If the word "imperfect" had been omitted, the court would undoubtedly have charged, as it had already done, that the plaintiffs could recover but the difference between $32\frac{1}{2}$ cents, which was the contract price, and the market price of goods such as the sample submitted.

Our conclusion, therefore, is that no error was committed which would justify a reversal, and that the judgment should be affirmed, with costs. All concur.